UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY C. TOWNSEND,<br><br>　　　　Petitioner,<br><br>v.<br><br>C/O COMMANDER KRIS WINTERS<br><br>　　　　Respondent. | Civil No. 05cv1713-L(WMc)<br><br>**ORDER DISMISSING PETITION WITH PREJUDICE** |

　　　　Petitioner Nancy C. Townsend, a military prisoner proceeding *pro se*, filed a habeas corpus petition pursuant to 28 U.S.C. § 2241, seeking judicial review of parole revocation by the Air Force Clemency and Parole Board ("Petition"). The government filed Respondent's Answer and Return, or in the Alternative, Motion to Dismiss ("Response"), including the administrative record. After receiving an extension of time, Petitioner did not file a reply to the government's Response. For the reasons which follow, the Petition is dismissed.

　　　　Petitioner was a U.S. Air Force deputy accounting and finance officer stationed at the San Vito Air Station in Italy. In a court martial in August 1994, she pled guilty to stealing and conspiring to steal $479,700. She was sentenced to eight years confinement, a pay grade reduction, dishonorable discharge, total forfeiture of her pay and allowances, and a fine of $175,000 or an additional five year confinement, if she did not pay the fine. Petitioner did not pay the fine, and her confinement was extended by five years. Her conviction and sentence were

affirmed on direct appeal to the U.S. Air Force Court of Criminal Appeals ("AFCCA"). The U.S. Court of Appeals for the Armed Forces denied further review. Her petition for a writ of error *coram nobis* to the AFCCA was denied. Her petition pursuant to 28 U.S.C. § 2241, filed while she was confined at the U.S. Disciplinary Barracks in Ft. Leavenworth, Kansas, was denied by the U.S. District Court for the District of Kansas, and the denial was affirmed by the Tenth Circuit Court of Appeals.

Petitioner was paroled and released on January 9, 2001, contingent on 500 hours of community service, restitution payments, and other conditions, to which she agreed. (App. at 22-28.) The supervision termination date was set for April 29, 2007.

Based on parole violation allegations, Petitioner's parole was suspended on July 14, 2004. Petitioner appeared with counsel for a preliminary hearing on October 20 and November 15, 2004. At the November 15 hearing, Petitioner admitted she violated one or more parole conditions. (*Id*. at 43.) Petitioner was returned to military custody on March 3, 2005, pending a parole revocation hearing. On May 12, 2005, a parole revocation hearing was held at Miramar Naval Consolidated Brig. Petitioner was represented by counsel. Effective June 28, 2005, the Air Force Clemency and Parole Board ("AFCPB") revoked Petitioner's parole based on a finding that of numerous parole violations.

The Petition asserts five claims pertaining to parole revocation. Petitioner seeks credit for all street time, reinstatement of parole status, reimbursement of all monies she paid toward restitution while on parole, and three-for-one credit for every day on parole while required to make restitution payments and perform community service. For the reasons discussed below, the Petition is dismissed with prejudice.

"[A] person challenging a military decision generally must satisfy two threshold elements before a court can determine whether review of his [or her] claims is appropriate." *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002); *see also Santiago v. Rumsfeld*, 425 F.3d 549, 554 (9th Cir. 2005).

> An internal military decision is unreviewable unless the plaintiff alleges (a) a violation of a recognized constitutional right, a federal statute, or military regulation; and (b) exhaustion of available intraservice remedies." If the plaintiff

alleges both of these things, a court weighs four factors to determine whether judicial review of his claims is appropriate. These factors include:

(1) The nature and strength of plaintiff's claim;

(2) The potential injury to the plaintiff if review is refused;

(3) The extent of interference with military functions; and

(4) The extent to which military discretion or expertise is involved.

*Wenger*, 282 F.3d at 1072 (internal quotation marks, brackets and citation omitted). These elements set forth a prudential rule, not a limitation on subject matter jurisdiction of federal courts. *Santiago*, 425 F.3d at 554.

The Petition does not address any of these prudential limitations. The government assumes for the sake of argument that Petitioner meets the two threshold elements of alleging a constitutional violation and exhaustion of administrative remedies. (Resp. at 16.) The court agrees. *See Santiago*, 425 F.3d at 554. With respect to the remaining four factors, the government attacks the nature and strength of Petitioner's claim, and argues the matter is best suited for military expertise. The court denies review primarily because of the weakness of Petitioner's claims.

"There is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Parole is one point on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. *Samson v. California*, 126 S. Ct. 2193, 2198, 2197 (2006), *citing United States v. Knights*, 534 U.S. 112, 119 (2001). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence." *Id*. at 2198, *quoting Morissey v. Brewer*, 408 U.S. 471, 477 (1972) (ellipsis omitted).

**Claim No. 1**

Petitioner challenges the validity of the restitution and community service provisions of her parole on the grounds that these items were not a part of her sentence. "In most cases, the

1 [government] is willing to extend parole only because it is able to condition it upon compliance
2 with certain requirements." *Samson*, 126 S. Ct. at 2198, *quoting Pa. Bd. of Probation and*
3 *Parole v. Scott*, 524 U.S. 357, 365 (1998).  Accordingly, parole conditions often are not a part of
4 the sentence imposed when a defendant is convicted and sentenced.  The applicable Air Force
5 regulations authorize the AFCPB to include various conditions in the parole plan, including
6 restitution.  (App. at 202-03 (Department of Defense Instruction ("DODI") 1325.7 ¶ 6.17.9.2.) &
7 195 (Air Force Instruction ("AFI") 30-205 ¶ 10.15.3).)  "Parole conditions must be sustained if
8 there is a rational basis in the record for them." *Bagley v. Harvey*, 718 F.2d 921, 925 (9th Cir.
9 1983); *see also United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) ("reasonably related
10 to the goal of deterrence, protection of the public, or rehabilitation of offender").  Since
11 Petitioner pled guilty to larceny, did not pay a fine, and had not paid any restitution, there is a
12 rational basis for restitution as a condition of parole.  In addition, community service is
13 consistent with the goals of rehabilitation of the offender.  *See T.M.*, 330 F.3d at 1240.
14       Petitioner points to the United States Sentencing Guidelines ("U.S.S.G.") § 5F1.3, and
15 argues her community service condition exceeded 400 hours.  Under the U.S.S.G.,
16 "[c]ommunity service may be imposed as a condition of supervised release." U.S.S.G.
17 § 5D1.3(e)(3); *see also id*. § 5F1.3.  The provision itself does not discuss any particular duration
18 of community service.  *Id*. § 5F1.3.  Petitioner's argument is based entirely on commentary,
19 which bases the duration preference on "heavy administrative burdens relating to the selection of
20 suitable placements and the monitoring of attendance." *Id*., Commentary.  The commentary that
21 "[c]ommunity service generally should not be imposed in excess of 400 hours," is not binding,
22 and was not provided for parolee benefit, but for the benefit of administration.  Accordingly,
23 Petitioner's challenges to the validity of the restitution and community service parole conditions
24 lack merit.
25 **Claim No. 2**
26       Petitioner also complains she did not receive street time credit for all the time she was on
27 parole and in material compliance with her parole conditions.  Petitioner was given street time
28 credit for the period January 9, 2001 to October 31, 2002.  (Pet. at 4.)  The AFCPB may order

forfeiture of street time from date of parole violation to the date of revocation or return to custody. (App. at 206 (DODI 1325.7 ¶ 6.17.11.2)().)  The record indicates that as of November 1, 2002, Petitioner was in violation of her parole conditions in at least three respects.

In spring 2002, Petitioner violated the condition to conduct herself in an honorable manner (*see* App. at 23), when she failed to disclose her felony conviction to her employer. Petitioner apparently filed two job applications with the state of Tennessee for two different sets of jobs. (App. at 80-96.) In her application dated February 2, 2001, she checked the box indicating she did not have any criminal history. (*Id*. at 81-82.) In her application dated February 13, 2001, she checked the box indicating the opposite. (*Id*. at 90-91.) Petitioner provided her parole officer only with the correctly completed February 13 application. (*See id.* at 65, 99; *see also id*. at 49-50.) She was hired by the financial office of the Department of Children's Services. (*Id*. at 98.) She was terminated effective April 4, 2002, when her employer found out she failed to disclose her criminal history. (*Id*. at 99.) Although the AFCPB decided not to initiate parole revocation proceedings at that time, it issued a letter of warning, stating in pertinent part:

> It has been reported that . . . you failed to fully disclose the nature of your federal conviction and supervised release status to your employer. . . . [T]he Board is not convinced it was an oversight that you failed to notify your Department Director of your felony conviction. The Board is not convinced that your employment difficulties arise out of the lapse in communication between the State Department of Personnel and your departmental personnel office. You have significant responsibility in this matter and your failure to act honorably is a violation of your condition of parole, which violation **could result in loss of street time** and return to prison.

(*Id*. at 68 (emphasis added).)  The letter warned Petitioner she may lose street time due to this violation. At the parole revocation hearing in 2005, the hearing officer found the records "definitively established [Petitioner] made deliberate attempts to deceive both the Tennessee Department of Personnel and [her parole officer]." (*Id*. at 49.) The AFCPB apparently adopted the finding. (*Id*. at 185.) The finding is supported by the record and is not contradicted by Petitioner.

In addition, the AFCPB found Petitioner failed to act honorably by involvement in illegal counterfeiting and sale of DVDs, and failure to report income from this business to her parole

officer as early as October 2002. (App. at 183.) In May 2004, Melvin Robinson informed Petitioner's parole officer Petitioner was involved in a counterfeit DVD business. (*Id.* at 52-53, 125.) Robinson befriended Petitioner while he was incarcerated at Ft. Leavenworth, Kansas, and continued to associate with her after his release in November 2002. He provided the parole officer with records, including records of approximately 974 e-mail transactions, allegedly evidencing Petitioner's on-line DVD sales. (*Id.* at 126.) The e-mail records provided by Robinson showed Petitioner was involved in the DVD business as early as October 2002. (*Id.*) Two parole officers visited Petitioner's residence in July and December 2004. (*Id.* at 131.) They saw equipment and supplies necessary to duplicate and distribute DVDs which "far exceeded what the casual movie fan or even collector would possess." (*Id.*) This observation corroborated Robinson's account.[1] When her residence was inspected, Petitioner explained this was a legitimate business she ran for her sister and that the tapes were sold over the internet. (*Id.*)

Before and after the probation officers' inspection, Petitioner provided different explanations. When she was interviewed on April 30, 2004, prior to Robinson's report, regarding her ability to meet her financial obligations, which far exceeded her income (*see id.* at 133-46), she explained her relatives were helping her. (*Id.* at 53.) Petitioner was again interviewed regarding her finances on May 7, 2004, after the parole officer had received information from Robinson. (*Id.*) At that time, she said she had been helping her sister and brother with their DVD business by packing and addressing boxes, and in return they paid her.[2] (*Id.* at 127.) She indicated she had been assisting with the business for the past two and a half years. (*Id.* at 53.) At the preliminary hearing, Petitioner denied she engaged in any form of business activity. (*Id.* at 37.) However, at the same hearing she admitted she helped her sister

---

[1]  Robinson was unavailable to testify at the revocation hearing. (*Id.* at 51.) He committed suicide on August 21, 2004. (*Id.* at 37.)

[2]  The payments from family members were not included in Petitioner's financial disclosures, which stated she was not employed. (*See id.* at 133-46.) Upon parole officer's request, Petitioner documented the payments with letters from family members, which indicated the payments were gifts. (*Id.* at 53)

with the DVD business, and that her sister paid some of Petitioner's bills as compensation, but did not give her any cash. (*Id.* at 36.) At the revocation hearing, Petitioner denied she engaged in the sale of DVDs and provided a new explanation, that the equipment the parole officers observed at her residence was needed for her court reporter schooling. (*Id.* at 62.) As the hearing officer observed, Petitioner's several explanations were inconsistent. (*Id.*) Whether the DVD business was Petitioner's or her sister's, Petitioner admitted she was involved in it, and had been since at least October 2002. Furthermore, whether the business was unlawful or legitimate, Petitioner failed to report her income from it on financial disclosures, which constituted a parole violation separate and distinct from engaging in an unlawful business. (*See id.* at 183.)

Last, Petitioner admitted she did not increase her restitution payments when her income increased. One of the conditions of her parole was to pay $100 per month or 10% of her monthly income as restitution, whichever was greater. (*Id.* at 26.) Petitioner admitted that after her income increased in November 2002, she continued to make minimum payments. (*Id.* at 55; *see also id.* at 160-71.)

Based on the foregoing, Petitioner was in violation of her parole conditions at the latest on November 1, 2002. Her claim that she did not receive adequate street credit lacks merit.

**Claim No. 3**

Petitioner next claims her constitutional rights were violated because hearsay testimony was allowed at the parole revocation hearing. Robinson was not available for cross-examination regarding his allegations of Petitioner's involvement in the DVD business. Instead, the parole officer's testimony of Robinson's report and documents supplied by Robinson were admitted. The Sixth Amendment right to confrontation does not apply to parole revocation proceedings. *United States v. Hall*, 418 F.3d 980, 985 (9th Cir. 2005), *citing Morrissey*, 408 U.S. at 480. "Rather, a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights." *Id*.

Although the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary

criminal trial," Petitioner has a due process right to confront and cross-examine witnesses against her during parole revocation proceedings, unless the government shows good cause for not producing the witness. *See id*. at 986, *citing Morrissey*, 408 U.S. at 489. "The court must weigh the releasee's interest in his [or her] constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Id*., *quoting United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999).

At the revocation hearing, the parole officer testified Robinson's report and documents were the source of the allegation that Petitioner was involved in a counterfeit DVD business. (App. at 51.) However, the allegation is also based on parole officers' observations at Petitioner's residence (*id*. at 51, 52, 131) and Petitioner's own statements (*see id*. at 131). This additional evidence corroborated Robinson's report and documents he provided. The hearing officer concluded Petitioner had engaged in an illegal activity. (*Id*. at 62, 63.) Although the finding was not entirely based on Robinson's report to the parole officer, the report was a significant piece of evidence supporting the allegation. Petitioner therefore had neither a weak nor a very strong interest in cross-examining Robinson. *Cf. Hall*, 419 F.3d at 986-88; *Comito*, 177 F.3d at 1171.

"In determining the government's good cause in not producing a witness, we look to both the difficulty and expense of procuring a witness and the traditional indicia of reliability borne by the evidence." *Hall*, 419 F.3d at 988 (internal quotation marks and citation omitted). In this case, no effort or expense would be sufficient to produce Robinson, since he was deceased at the time of the revocation hearing. (App. at 51.) On the other hand, the report he provided to the parole officer while he was still alive was corroborated by other evidence, and therefore appears to have been reliable.

On balance, Petitioner's interest in confronting Robinson was outweighed by the government's good cause for not producing him. Moreover, Petitioner admitted several parole violations, which are unrelated to the DVD business: Robinson, a convicted felon, lived with her from May to August 2003 and she did not report her contact with him to her parole officer, she opened a bank account with Robinson, she associated and correspondend with inmate Robert

Green from January to February 2003 without reporting the contact, she failed to remain within the geographical limits established by her parole officer from July 2003 to February 2004, and she did not increase her restitution payments when her income increased.  (*See* App. at 51, 52, 55, 120-122 & 160-71.)  The admitted parole violations by themselves would be sufficient to justify parole revocation.  (*See* App. 197-98 (AFI 31-205 ¶¶ 10.21.1; 10.9); 62-63.)  In light of the admitted parole violations, the court cannot find Petitioner was prejudiced by admission of Robinson's report.  *See Standlee v. Rhay*, 557 F.2d 1303, 1307-08 (9th Cir. 1977).  Accordingly, Petitioner's claim that her constitutional rights were violated when Robinson's report was considered at the revocation hearing lacks merit.

**Claim No. 4**

With respect to two of the eleven parole violations found by the AFCPB, Petitioner claims additional defects.  She maintains that "failure to act honorably by having bank accounts in other persons' names and 'laundering' money though those accounts" (App. at 183) was not a charge on the list of parole violations given to her at the preliminary hearing or revocation hearing.  Due process entitles Petitioner to notice of the claimed parole violations.  *See Morrissey*, 408 U.S. at 489.  Petitioner's alleged failure to disclose bank accounts and income were discussed at the preliminary hearing.  (App. at 36.)  Petitioner admitted she had a joint account with Robinson, and assisted in her sister's DVD mail order business.  (*Id*.)  The alleged income from the DVD business was the subject of two separate allegations at the preliminary hearing.  (*Id*. at 36, 37.)  Accordingly, Petitioner received notice that her bank accounts, income from the DVD business and bank account activity were included among parole violation allegations.

Petitioner also maintains that AFCPB's finding of her "failure to disclose to her supervising US Probation Officer, thus endangering the supervising US Probation Officer, on divers occasions from May 2003 to on or about August 2003, the presence of a person [Robinson] convicted of a violent crime, when the supervising US Probation Officer visited her home" (*id*. at 184), was not proven at the revocation hearing.  The evidentiary standard used by the AFCPB for revocation purposes is preponderance of the evidence.  (*Id*. at 197 (AFI 31-205

¶ 10.21.1.).) At the hearing, Petitioner admitted Robinson lived with her from May to August 2003, and was present at her residence on at least one occasion during the parole officer's visit. (*Id.* at 56.) Although Petitioner maintained she did not know of the exact nature of Robinson's conviction until August 2003, she did not deny he was convicted of a violent felony, and did not contend she disclosed her association with him at any time before she was interviewed about it on May 7, 2004. (*Id.* at 51, 53; *see also id.* at 126.) Accordingly, sufficient evidence was presented at the revocation hearing for the AFCPB to make its finding. Moreover, Petitioner's other admitted parole violations provided sufficient grounds for revocation. Therefore, to the extent there may have been any due process violation associated with the two AFCPB's findings under attack, Petitioner was not prejudiced by it.

**Claim No. 5**

Last, Petitioner claims her due process rights were violated in numerous respects. *Morrissey v. Brewer* outlines the minimum procedural safeguards required by due process. *See Black v. Romano*, 471 U.S. 606, 610 (1985).[3]

Petitioner claims that her parole was suspended in July 2004, but the preliminary hearing was not held until October, approximately three months later. Due process requires that the preliminary hearing be held as promptly as convenient after arrest. *Morrissey*, 408 U.S. at 485. Petitioner was not arrested until March 2005. Since her preliminary hearing was held before the arrest, her due process rights were not violated by undue delay.

She further maintains her rights were violated because a warrant for her arrest was issued in January 2005, but was not executed until March. Petitioner does not elaborate how this violated her due process rights, and cites to no authority. The minimum procedural safeguards required by due process, as enumerated in *Morrissey*, do not provide for any time limitations in this regard. *See id.* at 485-89.

---

[3] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), referenced in *Black* along with *Morrissey*, concluded that the procedures outlined in *Morrissey* for parole revocation should also apply in probation hearings. *Black*, 471 U.S. at 610, 611. "Parole, probation and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner." *Hall*, 419 F.3d at 985 n.4.

Petitioner claims she was not allowed to view any evidence at the preliminary hearing. However, the record reflects her counsel was given that opportunity. (*See* App. at 59 (Petitioner's counsel noted he took a look at some of the evidence during the preliminary hearing).)  Furthermore, the minimum procedural safeguards required by due process at the preliminary hearing stage do not require that parolee have the opportunity to view the evidence at that stage of the process. *See Morrissey*, 408 U.S. at 486-87.[4]

Petitioner also claims that once she arrived at Miramar Naval Consolidated Brig, military counsel was not assigned to her for two months to represent her at the parole revocation hearing. However, a counsel was assigned, and Petitioner was represented not only by one, but by two counsel at the parole revocation hearing. (*See* App. at 48.)  To the extent there may have been any due process violation associated with the delay in appointing counsel, Petitioner was not prejudiced. *See Standlee*, 557 F.2d at 1307-08.

In addition, Petitioner contends a period of over 120 days elapsed between the date of issuance of her warrant in January 2005, and the parole revocation hearing in May 2005. Due process requires that the revocation hearing be tendered "within a reasonable time after the parolee is taken into custody." *Morrissey*, 408 U.S. at 488.  In this regard, two months is not unreasonable.  *Id*.  Petitioner was arrested on March 3, 2005, and her revocation hearing was held on May 12, 2005, slightly more than two months later.

With respect to the revocation hearing itself, Petitioner maintains her rights were violated because the parole violation charges against her had to be proven only by a preponderance of the evidence and because the AFCPB decision is not appealable.  That  proceedings to revoke parole need not comply with the procedural protections constitutionally guaranteed for criminal prosecutions is well established. *See United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995), *citing Morrissey*, 408 U.S. 471. This includes proof by preponderance of the evidence. *Id*.  Likewise, the right to appeal is not included among the procedural protections afforded at

---

[4] To the extent Petitioner refers to her ability to cross-examine Robinson at the preliminary hearing, this issue is addressed above, in the context of her argument that hearsay evidence was used at the revocation hearing.

revocation hearings. *See Morrissey*, 408 U.S. at 485-89.  "The limited procedural protections afforded these proceedings are justified precisely because revocation of [parole] is not new punishment for a new crime." *Soto-Olivas*, 44 F.3d at 792.

Last, Petitioner maintains that a lack of an adequate law library and computer equipment at her place of confinement unconstitutionally deny her access to the courts.[5] To state a claim for deprivation of a constitutional right of access to the courts, a plaintiff must allege:  (1) an underlying non-frivolous attack on his sentence or conditions of confinement, which must be adequately described in the complaint; (2) the official actions; and (3) actual injury in the form of frustration or impediment of a non-frivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 353, 355 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989).  Petitioner would have to allege that lack of an adequate law library and computer equipment frustrated or impeded her attack on her parole revocation or conditions of confinement, causing her actual injury. *See Lewis*, 518 U.S. at 353, 355; *see also Christopher*, 536 U.S. at 415.  Petitioner does not allege, and since she was able to file the instant Petition, most likely could not allege, that she suffered an actual injury amounting to an unconstitutional deprivation of access to the courts.

For the foregoing reasons, the miscellaneous arguments presented in Petitioner's Claim No. 5., as well as her Claims No. 1 though 4, lack merit.  Accordingly, Petitioner will not be injured if review is denied.  The court therefore need not provide a review of her parole

/ / / / /

/ / / / /

---

[5] Unlike her other claims, this claim challenges the conditions of Petitioner's confinement, not the fact or duration of it. "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, . . . and a complaint under . . . 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (internal citations omitted).  Petitioner's access to courts claim should have been brought in a § 1983 action.  However, the court may consider it here. *See Willwording v. Swenson*, 404 U.S. 249, 251 (1971) (holding that district courts have discretion to construe a habeas petition attacking conditions of confinement as a complaint under section 1983 despite deliberate choice by petitioner to proceed on habeas).

revocation by military authorities.  *See Wenger*, 282 F.3d at 1072.  The Petition is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: January 29, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL